**William Ray MILLER, II, Plaintiff,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Defendant.**

**Case No. RDB 08–CV–1231.**

United States District Court, D. Maryland.

March 24, 2009.

---

Gary Ralph Jones, Baxter Baker Sidle Conn and Jones, Baltimore, MD, for Plaintiff.

Michael R. Goodstein, Matthew J. Burkhart, Bailey Cavalieri LLC, Columbus, OH, Stacey Ann Moffet, Eccleston and Wolf PC, Hanover, MD, for Defendant.

### MEMORANDUM OPINION

RICHARD D. BENNETT, District Judge.

Plaintiff William Ray Miller, II ("Miller"), filed this action against Defendant St. Paul Mercury Insurance Company ("St. Paul") seeking a declaration that St. Paul has a duty to defend and indemnify him with respect to an underlying lawsuit that was filed against him by Upper Hudson National Insurance Company ("Upper Hudson"). Pending before this Court is St. Paul's Motion to Dismiss Plaintiff's Complaint (Paper No. 21). The issues

1. The underlying lawsuit is captioned *Upper Hudson Nat'l Ins. Co. v. William R. Miller, II,*

have been fully briefed by the parties and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons set forth below, St. Paul's Motion to Dismiss (Paper No. 21) is GRANTED.

### BACKGROUND

On June 12, 2007, Miller entered into a contract for employment with Upper Hudson for the position of Chief Underwriting Officer. The employment agreement specified that Upper Hudson would indemnify Miller for any and all amounts incurred or paid by him in connection with any claims arising out of or relating to the performance of his duties as an employee or as an officer of Upper Hudson. In connection with this agreement, Upper Hudson purchased a claims made policy of insurance from St. Paul, policy number 590CM3153, made effective January 17, 2008, and retroactive to January 17, 2006 ("the Policy"). On February 19, 2008, Upper Hudson filed suit against Miller and multiple defendants, alleging that Miller, when acting as Upper Hudson's Chief Underwriting Officer, committed various wrongful acts in connection with the issuance of bonds to third parties ("the Underlying Lawsuit").[1] More specifically, the Underlying Lawsuit resulted from an aborted stock purchase agreement that related to AMS Surety Holdings Corp.'s ("AMS Surety") acquisition of Upper Hudson from Upper Hudson Holdings, LLC. Miller was the sole shareholder and Chief Executive Officer of AMS Surety. Upper Hudson asserted that Miller and his associates at AMS Surety were liable for racketeering, racketeering conspiracy, fraud, and conspiracy to commit fraud.

Case No. 08–cv–0440 (D.Md.).

On April 4, 2008, Miller filed suit against St. Paul, in the Circuit Court for Baltimore City, seeking a declaration that St. Paul was obliged to defend Miller against the Underlying Lawsuit due to the duty to defend provision contained in the Policy. The case was removed to this Court on May 12, 2008 on the basis of diversity jurisdiction.[2] On June 19, 2008, St. Paul filed the pending Motion to Dismiss, in which it contends that the liability insurance policy it issued to Upper Hudson contains an "insured versus insured" exclusion that defeats Miller's request for a declaration of coverage.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). Therefore, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). A complaint must meet the "simplified pleading standard" of Rule 8(a)(2), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a).

Although Rule 8(a)(2) requires only a "short and plain statement," the Supreme Court of the United States recently explained that a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

While "notice pleading requires generosity in interpreting a plaintiff's complaint[,] . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.,* 159 F.3d 186, 191 (4th Cir.1998). In considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000) (citations omitted).

## ANALYSIS

Miller contends that St. Paul is obligated, under the Policy, to defend Miller against the Underlying Lawsuit brought by Upper Hudson. The Management Liability Insuring Agreement for Directors and Officers Individual Coverage states:

> The Insurer shall pay on behalf of the Insured Persons Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period. . . .

---

**2.** Miller is a resident of Maryland while St. Paul's principal place of business is in Minnesota.

Policy, page 10. In addition, the Policy contains a duty to defend provision, which provides:

> If the Duty of the Insurer to Defend is selected as set forth in the Declarations, then subject to the provisions of the Defense and Settlement section of the General Terms, Conditions and Limitations, the Insurer shall have the right and duty to select counsel and defend any Claim covered by this Insuring Agreement. The Insureds shall have the right to participate in, and assist in the direction of, the defense of any Claim.

Policy, page 10.

St. Paul counters that the operation of the above provisions is forestalled by the Policy's "insured versus insured" exclusion, which bars coverage for "any Claim made against any Insured ... brought or maintained by or on behalf of any Insured...." Policy, pages 28–29. Miller rebuts that this exclusion does not apply under the circumstances, as it is intended to apply only to bar collusive, or "friendly," lawsuits between officers and directors and their insured companies. He contends that since the Underlying Lawsuit seeking damages associated with third party claims and administrative and regulatory actions cannot be deemed collusive, the "insured versus insured" exclusion is not triggered.

■ Because jurisdiction over this contractual dispute is based upon diversity, this Court must first determine which state's law applies. "In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu*, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made." *Roy v. Northwestern Nat'l Life Ins. Co.*, 974 F.Supp. 508, 512 (D.Md.1997). "For choice of law purposes, a contract is made where the last act necessary to make the

contract binding occurs." *Id.* Typically, "the *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Hyde v. Fidelity & Deposit Company of Maryland,* 23 F.Supp.2d 630, 632 (D.Md.1998) (quotation omitted). The Policy was issued to a New York company, Upper Hudson, and was issued via a New York agent. In addition, the terms of the policy refer to the laws of New York. Policy, page 4. Therefore, New York law applies to the interpretation of the Policy issued by St. Paul to Upper Hudson.

■ Under New York law, "the starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous." *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 306 (2d Cir.1987). If the terms are plain or unambiguous, "the language will be given its ordinary meaning and effect, as the need to resort to rules of construction arises only when ambiguity exists." *Id. See National State Bank v. American Home Assurance Co.,* 492 F.Supp. 393, 396 (S.D.N.Y.1980) ("the policy must be enforced as written, and the Court is not free to modify its terms by judicial construction."). Nor may a court "admit extrinsic evidence in order to determine the meaning of an unambiguous contract" or "to increase a party's obligations where those obligations were explicitly outlined in the contract itself." *Omni Quartz, Ltd. v. CVS Corporation,* 287 F.3d 61, 64 (2d Cir. 2002); *See Investors Insurance Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100, 104 (2d Cir.1990) (A party "is precluded from introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing.").

■ This Court finds that the language in Policy's insured versus insured exclu-

sion is plain and unambiguous. The exclusion provides, in pertinent part:

> The Insurer shall not be liable for Loss on account of any *Claim* made against any *Insured* brought or maintained by or on behalf of any *Insured*, or *Company*, in any capacity. . . .

Policy, pages 28–29 (emphasis added). The Policy defines "Insured" to include "Insured Persons" and "the Company." "Insured Persons" is further defined to include "Directors and Officers" and those "Employees" who are granted coverage. Policy, page 26. The Policy defines "Company" as Upper Hudson Holdings, LLC and its subsidiaries.[3] Policy, page 23. Consequently, both Miller (a covered employee and/or officer of Upper Hudson) and Upper Hudson (a subsidiary of Upper Hudson Holdings, LLC[4]) are "Insureds" under the Policy. Finally, the Policy defines "Claim" to include "a civil proceeding for monetary damages against any Insured commenced by the service of a complaint or similar pleading, in a federal, state or provincial court. . . ."—a definition that plainly covers the Underlying Lawsuit. Policy, page 22.

Therefore, applying the facts of this case to the provision at issue, it is clear that the Insurer (St. Paul) is excluded from liability relating to any Claim (the Underlying Lawsuit) brought against any Insured (Miller) by another Insured or the Company (Upper Hudson). In light of the plain language of the exclusion, St. Paul does not have a duty to defend Miller in the underlying suit brought by Upper Hudson.

In making this finding, this Court is guided by the Second Circuit's decision in *Levy v. National Union Fire Insurance Co.*, 889 F.2d 433 (2d Cir.1989), which applied New York law in interpreting a virtually identical insured versus insured clause. In *Levy*, the former directors of Crazy Eddie, Inc. sought liability coverage from insurer National Union in defense of a suit brought against them by Crazy Eddie. *Id.* at 434. National Union denied coverage and the directors brought an action for declaratory judgment. *Id.* The Second Circuit affirmed the district court's finding that the exclusion clause applied to Crazy Eddie's claims and noted that "the policy self-evidently excludes claims arising from suits brought by 'one or more past, present, or future directors . . . and/or the Company.'" *Id.* The court added that because the exclusion was unambiguous, "canons of construction favoring the insured are irrelevant." *Id.*

■ Miller maintains that this Court should instead base its decision upon the policy purposes underlying insured versus insured exclusions and certain theories of statutory construction. Miller emphasizes that the underlying purpose of the exclusion is "to prevent collusion, 'such as suits in which a corporation sues its officers and directors in an effort to recoup the consequences of their business mistakes . . . , thus turning liability insurance into business-loss insurance. . . .'" *Bodewes v. Ulico Casualty Co.*, 336 F.Supp.2d 263, 272 (W.D.N.Y.2004) (citing *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956, 958 (7th Cir.1999)). Miller con-

---

**3.** More specifically, the Policy defines Company as "any entity named in the Declarations and its Subsidiaries." Policy, page 23. The Declarations name Upper Hudson Holdings, LLC as the relevant entity. Policy, page 7.

**4.** In the underlying lawsuit, Upper Hudson alleges that it is a wholly-owned subsidiary of

Upper Hudson Holdings, LLC. (Underlying Complaint ¶ 4.) The Underlying Complaint is attached to the Complaint as Exhibit 3, and this Court considers the allegations stated therein in ruling upon the pending motion to dismiss. Fed.R.Civ.P. 10(c).

tends that because Upper Hudson's lawsuit against Miller is "highly adversarial and accuses Miller of egregious behaviors and potentially criminal acts," the exclusion does not apply to the instant suit. Pl.'s Opp. to Def.'s Mot. to Dismiss at 16. In addition, Miller militates for the application of the principle of *contra proferentem*, under which courts are obliged to construe any ambiguity against the insurer-a principle that is "more strenuously applied ... to an exclusionary provision." Pl.'s Opp. to Def.'s Mot. to Dismiss at 12 (citing *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir.1987)) ("[t]he rule that insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability.").

■ This Court resists Miller's invitation to look beyond the plain language of the Policy to inquire into the general policy rationale underlying insured versus insured exclusions. To engage in such a diversion would be to contravene the legal mandate under New York law to enforce an insurance contract as written in the absence of any ambiguity. Likewise, the application of *contra proferentem*, or any special canon of contractual interpretation, is prevented in the present case, as "there is no reasonable basis for a difference of opinion" as to the literal meaning of the exclusion, nor has Miller pointed to any. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989) (internal quotation omitted). Moreover, a "court may not ... find ambiguity in an insurance policy provision where none exists." *United Capital Corp. v. Travelers Indem. Co.*, 237 F.Supp.2d 270, 274 (E.D.N.Y. 2002); *see Pergament Distribs., Inc. v. Old Republic Ins. Co.*, 128 A.D.2d 760, 513 N.Y.S.2d 467, 468 (N.Y.App.Div.1987) ("al-

though it is true that any ambiguity in an insurance contract must be resolved in favor of the insured, the court should not strain itself to find an ambiguity where words have a definite and precise meaning").

■ Finally, Miller asserts that even if the exclusion applies, there are two exceptions to the exclusion which apply in this case that require St. Paul to comply with its duty to defend. The exceptions cited to by Miller, provide:

> The Insurer shall not be liable for Loss on account of any Claim made against any Insured ... brought or maintained by or on behalf of any Insured, or Company, in any capacity, except:
>
> ...
>
> (d) a Claim brought or maintained by any *Insured Person* for contribution or indemnity, if the Claim directly results from another Claim covered under this Policy [the "Contribution Exception"];
>
> ...
>
> (f) a Claim brought by an *Insured Person* solely in his or her capacity as an owner or beneficiary of, or insured under, a Contract of Insurance issued by the Company for a Professional Services Act; provided that such Claim is instigated totally independent of, and totally without the solicitation of, any other Insured [the "Contract of Insurance Exception"].

(Policy at page 29) (emphasis added). This Court finds that both the Contribution Exception and the Contract of Insurance Exception are inapplicable based upon a straightforward interpretation of their plain language. In order for either exception to apply, the underlying claim would have to have been brought by an "Insured Person." As noted above, an "Insured Person" is defined as "any Director or Officer, and only to the extent

that coverage is granted as set forth in the Declarations, any Employee, Leased Employee or Independent Contractor." (Policy, page 26). Since Upper Hudson is not an "Insured Person," both exceptions to the insured versus insured exclusion are inapplicable.

The Policy's insured versus insured exclusion unambiguously relieves St. Paul from its duty to defend Miller in the underlying suit filed by Upper Hudson. Moreover, like the Second Circuit found in *Levy*, this Court determines that the arguments raised by Miller are frivolous, especially considering that he has not attempted to show that the exclusion is ambiguous in any way. Miller cannot demonstrate any set of facts that would entitle him to coverage from St. Paul. Therefore, Miller's Complaint is hereby dismissed with prejudice.

## CONCLUSION

For the reasons stated, St. Paul Mercury Insurance Company's Motion to Dismiss (Paper No. 21) is GRANTED. A separate ORDER follows.